Date signed December 01, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | |
|---|---|
| IN RE: : <br> : <br> REGINALD ALPHONSO MARBURY : <br> : <br> Debtor : <br> -------------------------------- : <br> CHARLES COUNTY NURSING : <br> AND REHABILITATION CENTER : <br> Plaintiff : <br> vs. : <br> : <br> REGINALD ALPHONSO MARBURY : <br> Defendant : <br> -------------------------------- : | Case No. 09-13017PM <br> Chapter 13 <br><br><br><br><br><br> Adversary No. 09-0214PM |

**MEMORANDUM OF DECISION**

This case came before the court for trial of the Complaint filed by the Charles County Nursing and Rehabilitation Center ("Plaintiff" and "CCNRC") pursuant to § 523(a)(4) of the Bankruptcy Code seeking a ruling that the debt owed to it by the Debtor was not discharged by virtue of his fraud or defalcation while acting in a fiduciary capacity. Attached to the Complaint is a Stipulation of Settlement Agreement entered in the Circuit Court for Charles County, Maryland ("the Agreement"), in a lawsuit by the Plaintiff against the Debtor, Wayne L. Marbury, Marvin Marbury, and Philip D. Marbury, Sr. The Agreement provided:

WHEREAS, the balance due by Pearl Marbury to CCNRC at the time of her death was $89,933.00; and

WHEREAS, CCNRC has alleged that Wayne Marbury and Reginald Marbury fraudulently transferred to themselves certain of the real estate proceeds and certain of the monthly social security or civil service benefits to which Pearl Marbury was entitled; and

WHEREAS, Wayne Marbury and Reginald Marbury dispute said contentions; and

WHEREAS, the parties have agreed to enter into this Stipulation of Settlement Agreement for purposes of resolving any and all disputes concerning this [sic] issues.[1]

Under the terms of the Agreement, the Debtor and his brother, Wayne L. Marbury, agreed to pay the Plaintiff $75,000.00, with $20,000.00 to be paid before February 16, 2009, and the balance of $55,00.00 to be paid over a 5-year period. On February 24, 2009, the Debtor filed this bankruptcy case under Chapter 7. After this bankruptcy case was filed, the Plaintiff filed a Motion for Entry of Consent Judgment in the Charles County action, and, in violation of the automatic stay of § 362(a)(1), a Judgment was entered in Plaintiff's favor against the Debtor in the sum of $79,933.00, plus interest of $9,378.72, and attorneys' fees of $20,000.00. The Judgment is void and of no probative value. *Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (CA7 2001). Legal proceedings are not an exception to this rule. *In re Wardrobe,* 559 F.3d 932, 934 (CA9 2009).

The Debtor filed a response to the Complaint, and the case came before this court for trial on October 14, 2009. William Holman, the Chief Financial Officer of the Plaintiff, testified on its behalf, and the Debtor testified on his own behalf. The facts are straight-forward and do not appear to be in material dispute. On March 16, 2004, Pearl Marbury, Debtor's mother, was admitted to Plaintiff's facility. She was diagnosed with Parkinson's Disease, dementia, and

---

[1] While this point does not appear to be pressed by Plaintiff, it may be noted that the Stipulation of Settlement Agreement attached to the Complaint contains the following provision: "7. The parties further agree that should a judgment be entered, that the judgment shall reflect the judgment is for a fraudulent transfer and that therefore said claim is not dischargeable in bankruptcy." Such provisions are void as contrary to public policy. *In re Huang*, 275 F.3d 1173, 1177 (CA9 2002); *Freeman v. Freeman*, 165 B.R. 307, 312 (BC S.D. Fla. 1994); *In re Minor*, 115 B.R. 690, 694 (D. Colo. 1990). Nor could the Judgment approving the Agreement support a collateral estoppel argument, as the brothers, in the Agreement, expressly disputed the allegations of fraudulent transfer of their mother's assets.

various other health problems.  Because of her unstable mental condition, the Admission Agreement was signed by Wayne L. Marbury.  Shortly after her admission, her husband, Felix Marbury, passed away, leaving Pearl Marbury as the sole owner of real property located at 3250 Livingston Road, Indian Head, Maryland.  At the time of Pearl Marbury's admission to CCNRC, she was Medicaid eligible so that her expenses were covered by the Department of Social Services ("DSS").  When authorities at DSS learned of the ownership of the real property, a redetermination of eligibility was made, and its payments ceased.

By Durable Power of Attorney (Exhibit No. 4 to Plaintiff's Motion for Summary Judgement), executed August 4, 2004, the Debtor was appointed as his mother's attorney-in-fact and her guardian, if that became necessary.  Wayne L. Marbury was appointed as the successor for both posts.  By Deed dated August 16, 2004, signed by the Debtor and Jacquelyn O. Washington as joint tenants, the Indian Head real estate was conveyed to Mia Marbury for the sum of $140,000.00.  After the expenses of sale, and payment of $46,000.00 to Jacquelyn O. Washington, the Debtor received $91,904.93.  Of this amount, the Debtor states that he spent approximately $14,000.00 on his parents' funerals. The Debtor also received the monthly Civil Service annuity that his mother was entitled to receive on account of her deceased husband's employment. The Debtor's failure to devote these funds, over which he had complete control, to his mother's bills is the gravamen of this Complaint, filed pursuant to 11 U.S.C. § 523(a)(4) that provides:

> **11 U.S.C. § 523.  Exceptions to discharge**
>
> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> \*          \*          \*          \*          \*
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Throughout the time of Pearl Marbury's residency in the facility, all bills were sent to Wayne L. Marbury.  The Debtor's name did not appear on the bills, and the Debtor never received a copy of the March 16, 2004, Admission Agreement by and between Wayne Marbury and CCNRC.  While from time to time he saw copies of correspondence from CCNRC at his brother's house, the Debtor had no relationship with Plaintiff.

The Complaint fails to state a claim under 11 U.S.C. § 523(a)(4).  The reason for the failure can be summed up in this short quote from a leading text: "[F]or the debt to be

nondischargeable under section 523(a)(4), it must be directly related to the fiduciary relationship between the debtor and the creditor." *Collier on Bankruptcy* ¶523.10[1][d] at 523-74 (15th ed. rev. 2009). The legal analysis begins with the general rule "that exceptions to discharge in §523(a) must be narrowly construed*." In re Bucci*, 493 F.3d 635, 642 (CA6 2007). Plaintiff has the burden of proof to establish an exception to discharge and must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "A threshold inquiry is whether a fiduciary obligation runs from the debtor to the creditor." *In re House*, 2007 WL 2126260 *3 (BC N.D. Ill.). Put another way, a plaintiff must prove two elements: a fiduciary relationship between it and the debtor and fraud or defalcation committed by the debtor in the course of that fiduciary relationship. *Young v. Fowler Bros.*, 91 F.3d 1367, 1371 (CA10 1996); *Lexington Health Care Ctr. of Elmhurst, Inc., v. McDade,* 282 B.R. 650, 658-659 (B.C. N.D. Ill. 2002); *In re Hogue*, 221 B.R. 786, 793 (B.C. N.D. Okla. 1998).

*McDade*, *supra*, also involved an action by a long-term care facility against the child of a patient. The debtor in that case also sold the patient's real property, and, as a result under Illinois law, $41,345.15 of the patient's funds had to be spent on his care before any further state aid would be expended on his behalf. Under the terms of a power of attorney, the debtor made a gift to herself of $18,000.00 in recognition of her efforts in cleaning up the property to prepare it for sale. Unlike the case at hand, however, the debtor signed the Admission Agreement as a responsible party. The creditor argued that the gift caused the parent to default on the Admission Agreement and that the fiduciary duty owed by the debtor to her parent, coupled with her signing the Admission Agreement, ran to the creditor as a third party beneficiary. The debtor in turn argued that, even if a fiduciary relationship existed with the creditor, it was at best a constructive trust and not the express trust required under § 523(a)(4). *Cf. In re Patel*, 565 F.3d 963, 967 (CA6 2009). The court found that it was insufficient for the creditor to merely establish that the debtor stood in a fiduciary relationship to her father under the power of attorney and concluded that "[u]nder the facts of the matter at bar, this could only occur if the Admission Agreement created a contractual fiduciary relationship between the Debtor and the Creditor." 282 B.R. at 659. The court went on to point out that the Admission Agreement coupled with the power of attorney failed to establish the requisite § 523(a)(4) relationship between the debtor and the creditor. CCNRC has an even weaker position than the creditor in *McDade* because of the absence of any agreement between it and the Debtor.

For support of its position, Plaintiff relies upon the case of *Valley Mem'l Homes v.*

*Hrabik,* 330 B.R. 765 (BC N.D. 2005). As in this case, Hrablik had a parent hospitalized in a long-term care facility. He was empowered by a durable power of attorney to handle his parent's affairs; specifically, he was to pay all her just debts and expenses and to do whatever was necessary and proper in the management of her affairs. The power of attorney was to be used for her benefit only and exercised only in a fiduciary capacity.[2] The court held that his obligation to pay for his mother's care was not dischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6). Citing the case of *Jafarpour v. Shahrokhi*, 266 B.R. 702, 707 (BAP CA8 2001), a decision also written by the same judge, the court held that plaintiff only needed to show two elements in order to prevail under (a)(4): (1) that he was acting in a fiduciary capacity, and (2) that he committed fraud or defalcation in the course of that relationship. For support of the proposition that recovery under § 523(a)(4) merely requires proof of those two elements, the *Jafarpour* case cited the case of *Fowler Bros. v. Young, supra,* but ignored the language in *Fowler Bros.* that the action required a fiduciary relationship between the debtor and creditor. *See Fowler Bros.*, 91 F.3d at 1371.

  The court finds the *Hrablik* case was founded on a misreading of the Tenth Circuit's opinion in the *Fowler Bros.* case and therefore was wrongly decided and against the weight of authority. The only reasonable reading of § 523(a)(4) is that the fiduciary capacity of the debtor relates only with respect to the creditor moving under (a)(4). One begins and ends with the incontrovertible conclusion that the Debtor never owed a fiduciary duty to CCRNC, as there was no relationship of any sort between the two parties. The expansion of § 523(a)(4) sought by Plaintiff collides with the cardinal principle that exceptions to discharge are to be narrowly construed. *Bucci, supra; In re Hyman*, 502 F.3d 61, 66 (CA2 2007).

  An appropriate order will be entered.

---

[2] Unlike the power of attorney in the *Hrablik* case, the power of attorney granted to Debtor contains no such restriction. To the contrary, paragraph 3.17 endows Debtor with "all powers described herein, as freely, fully and effectively as I could or might do personally if present and of sound and disposing mind." Paragraph 4.01 then goes on to "ratify, allow, acknowledge, and hold firm and valid all acts heretofore or hereafter taken by my attorney-in-fact by virtue of these presents." Compare this power of attorney with that used in the case of *Figgins v. Cochrane*, 942 A.2d 736, 739 (Md. 2008) that limits the grant of powers to the attorney "with the understanding that they will be used for my benefit and on my behalf and will be exercised only in a fiduciary capacity."

cc:
Stephen P. Fitzgerald/John E. Ray, Esq., PO Box 310, 106 St. Mary's Ave., La Plata MD 20646
Edward V. Hanlon, Esq., 5510 Cherrywood Lane, Suite G, Greenbelt, Md 20770

**End of Memorandum**